APOLINAR DE JESÚS AND MATILDE DE JESÚS, Plaintiffs and Appellants, *v.* ELSIE ABBOTT COLÓN AND SEBASTIÁN COLÓN. Defendants and Appellees.

No. 10864. Argued November 2, 1953.—Decided November 30, 1954.

*Bolívar Pagán* for appellant. *Arturo Ortiz Toro* and *Manuel Abreu Castillo* for appellees.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

On June 10, 1949 Apolinar de Jesús filed a filiation suit in the former district court against Elsie Abbott Colón and Sebastián Colón. The plaintiff alleged the following: He was born on April 14, 1910 in Arecibo. He is the natural son of Matilde de Jesús and Carmelo J. Colón because (1) his mother and Colón were living in concubinage when he was conceived and when he was born, (2) Colón recognized him as such in an indubitable written instrument, and (3) Colón always treated him publicly and privately as his son and provided for his education and support. When the plaintiff

was conceived and born, Matilde and Colón were single and could marry. Colón died intestate on May 21, 1949. He left, among other property, real estate described in the complaint which was worth in excess of $400,000. When Colón died, he was married to the defendant, Elsie Abbott Colón. The latter and the defendant Sebastián Colón, the only legitimate child of Colón and Elsie Abbott, together with the plaintiff, were the only and universal heirs of Colón. The plaintiff prayed that he be declared an acknowledged natural child of Colón and that he be awarded his corresponding participation in the property left by the latter.

The answer to the complaint alleged in substance as follows: Colón was not the father of the plaintiff and all the other facts alleged in the complaint with reference to the alleged recognition of the plaintiff as his child never occurred. Colón was single when the plaintiff was conceived and born. But Matilde de Jesús, mother of the plaintiff, could not marry at the time because she was married on January 23, 1902 to Pablo Marrero and the marriage had not been annulled or dissolved and they were living as man and wife when the plaintiff was conceived and born. The plaintiff was registered as the legitimate son of Pablo Marrero and Matilde. It is admitted that Colón died intestate on May 21, 1949 but he did not own at the time all the real estate described in the complaint. He owned only the real estate described in the answer, which was worth less than $80,651.72. It is admitted that when he died, Colón left as his heirs the two defendants, his wife Elsie Abbott Colón, and his legitimate son, Sebastián Colón.

The answer also alleges that after Pablo Marrero and Matilde, mother of the plaintiff, were married in 1902, they lived as man and wife until after Matilde became 21 years of age, both spouses having ratified the marriage; that the plaintiff was born to Pablo Marrero and Matilde while they were living together as man and wife and was registered as their legitimate son; that the plaintiff was born more than

180 days after the marriage had been celebrated and no physical impossibility of the husband to have sexual intercourse with his wife existed within the first 120 days of the 300 days that preceded the birth of the child; that the plaintiff has always used the surname of Marrero and not Colón; and that when he registered for military service, married in 1932, and recorded the eight children born of his marriage, he always used the paternal surname of Marrero and is estopped from denying that Marrero is his paternal surname.

The answer also set forth as special defenses (1) that the plaintiff has no "juridical personality" to challenge the marriage of his mother and Pablo Marrero, (2) that no evidence is admissible in order to contest the legitimacy of the plaintiff as the legitimate son of Pablo Marrero, except as provided in § 113 of the Civil Code, and (3) that the action has prescribed.

On June 24, 1952, with the permission of the trial court, the plaintiff filed an amended complaint. For the first time Matilde de Jesús was joined as a party plaintiff with Apolinar de Jesús. The new complaint omitted the allegation found in the original complaint that Colón had recognized Apolinar as his natural child in an indubitable written instrument. It alleged that when the latter was born, Colón and Matilde were single and each of them could marry. It further alleged that the 1902 marriage of Pablo Marrero and Matilde was null *ab initio* because (1) Matilde was not of the necessary legal age for marriage and consent therefor had not been given by her parents, and (2) the marriage was contracted through violence, intimidation, and threats of grave danger on the part of Pablo Marrero against Matilde. The plaintiffs prayed that the trial court hold (1) that the marriage between Pablo Marrero and Matilde was null and void, (2) that Apolinar is the recognized natural child of Colón, and (3) that Apolinar be awarded the corresponding participation in the property left by Colón.

The defendants moved to dismiss the amended complaint on the ground that it failed to allege facts sufficient to constitute a cause of action. The trial court entered a judgment granting the motion and dismissed the complaint. On appeal, the plaintiffs argue that the trial court erred (1) in holding, when passing on the defendants' motion to dismiss the complaint for lack of facts constituting a cause of action, that Matilde could not be joined as a plaintiff in the filiation suit, (2) in holding that the action for nullity of the marriage between Pablo Marrero and Matilde had prescribed, (3) in passing, without any allegations or testimony, on the validity of the marriage between Pablo Marrero and Matilde, and (4) in dismissing the complaint without granting the plaintiff an opportunity to amend the complaint.

This case bristles with a host of potential questions of substantive law and procedure. We put all of them to one side as unnecessary to decide in view of the allegations of the amended complaint and the posture of the case as it reaches us. If Apolinar's claim for filiation has prescribed, an opinion on all the other questions raised by the judgment and opinion of the trial court and the errors assigned by the plaintiffs would serve no useful purpose. We therefore turn to a discussion of the question of prescription.

Apolinar was born in 1910. His status as to filiation is therefore governed by the pertinent provisions of the Civil Code of 1902, which remained in effect until 1911. Under the 1902 Code, from the point of view of substantive law, no distinction was made between an adulterous and a natural child; they were both characterized as illegitimate children. *Torres* v. *Heirs of Cautiño*, 70 P.R.R. 614, 617; *Fuentes* v. *District Court*, 73 P.R.R. 893, 905–6. Consequently, the defendants could not, as a matter of substantive law, resist the present claim of Apolinar for filiation on the *sole* ground of the validity of the marriage between Pablo Marrero and Matilde, provided of course that Apolinar could

show that in his case the requisites for filiation had been fulfilled.[1] In other words, in order to establish his status as a natural child of Colón, it is not necessary to obtain a judgment of nullity of his mother's marriage as such. It follows that, for purposes of this filiation suit, the alleged validity or nonvalidity of the marriage between Pablo Marrero and Matilde is immaterial. By the same token, it is unnecessary to determine in this case whether the suit for nullity was properly joined with the filiation suit or who were the necessary parties in the former.

Despite the fact that under the 1902 Code there is no difference between an adulterous and a natural child and they both have the same rights as illegitimate children as a matter of substantive law, the distinction between them does exist, for purposes of prescription in a suit brought at this time, for children born under the 1902 Code. Consequently, on the issue of prescription there are two possibilities in this case: (1) the plaintiff was an alleged natural child on the theory that the 1902 marriage of Pablo and Matilde was null; (2) he was an alleged adulterous child on the theory that the said marriage was valid.[2] If the plaintiff was a natural rather than adulterous child because the 1902 marriage was void, the statute of limitations governing his case is § 126 of the Civil Code, providing that he

---

[1] Where the adultery is committed by the mother of the child, additional problems arise: the presumption of legitimacy, who may sue to challenge it, the type of proof necessary to overcome it, the statute of limitations. See *Agosto* v. *Javierre, ante,* p. 444, where the majority of this Court holds that a suit for filiation may be brought by a plaintiff who alleges that he is a natural child of the defendant even if his mother was married at the crucial time to another man, notwithstanding § 116 of the Civil Code. See also § § 113 and 117 of the Civil Code. *Cf. Chabrán* v. *Méndez,* 74 P.R.R. 719.

[2] We find it unnecessary to discuss (1) whether the 1902 marriage was only voidable rather than void, or (2) whether the plaintiff is presumptively legitimate even if it were possible at this late date to invalidate the marriage of Pablo and Matilde. *Cf. Cintrón* v. *Román,* 36 P.R.R. 437; *Miranda* v. *Cacho,* 66 P.R.R. 521, and dissenting opinion in the latter case at p. 529.

must sue within a year after the death of his putative father. *Fuentes* v. *District Court, supra,* 906. Since Colón died on May 21, 1949, it would seem at first blush that the complaint was filed in time. But in order to establish that he was a natural child, the plaintiff was required to show that his parents were capable of marrying at the crucial time. This in turn makes it necessary for him to attack the validity of the marriage of Matilde and Pablo. We need not determine a number of questions, such as whether the plaintiff has the capacity to make such an attack on the marriage, see § 111 of the Civil Code, and whether a successful attack on the marriage would be enough in itself to destroy the legitimacy of the plaintiff. See footnotes 1 and 2. We assume, without deciding, that all these problems would be resolved in favor of Apolinar. What is important, for our purposes, is that, in order to establish that he was a natural rather than adulterous child, it was necessary for Apolinar to join as indispensable parties both his mother and her husband, Pablo Marrero. Apolinar did bring his mother into the case as a plaintiff.[3] He has never joined his father or the latter's heirs as a party.[4] Moreover, even if the mother were the only other indispensable party and even if it were proper to join her as a plaintiff rather than as a defendant, the statute of limitations is calculated under those circumstances from the date the mother as an indispensable party was first joined as a party. *Bithorn* v. *Santana,* 68 P.R.R. 281, 285; *Fuentes* v. *District Court, supra,* 918–9. The amended complaint joining the mother for the first time as a party was filed in 1952. This was more than a year after the putative father died in 1949. We therefore see that, treating the plaintiff as an alleged natural child of Colón, his claim was barred by the statute of limitations.

---

[3] We put to one side the problem of whether the mother should be a defendant rather than a plaintiff.

[4] Although we cannot consider it on the motion to dismiss now before us, other documents in the record apparently show that Pablo Marrero died in 1923.

We reach the same result if we treat the claim as one in which the plaintiff contends that he is an adulterous child who can nevertheless recover by showing that in fact he fulfills the requisites of a natural child. See footnotes 1 and 2. Putting to one side the problems as to legitimacy under §§ 113 and 117 of the Civil Code, an adulterous child must bring his suit within 15 years after he is of age. *Torres v. Heirs of Cautiño*, 70 P.R.R. 614; *Fuentes v. District Court, supra*, 906; *Cortez v. Heirs of Solá*, 72 P.R.R. 585. Here the plaintiff was born in 1910. He therefore should have filed his suit by 1946. The first complaint was not filed until 1949. It follows that, treating the plaintiff as an adulterous child, his claim had likewise prescribed.

 The only remaining question is whether the defense of prescription was before the trial court. As we have seen, the answer to the original complaint raised limitations as a special defense. But an amended complaint was thereafter filed. And the only pleading in response to the amended complaint is the motion to dismiss for failure to state facts sufficient to constitute a cause of action. The defendants contend that the issue of limitations was properly raised by the said motion. See 2 Moore's Federal Practice, 2nd ed., pp. 2257–58, and cases cited in footnote 4, p. 2257–8; *Taylor v. Houston and Cave*, 211 F.2d 427, (C.A., D.C.), decided March 4, 1954; *Berry v. Chrysler Corporation*, 150 F.2d 1002 (C.A. 6, 1945). This Court has held that where a complaint shows on its face that the action was not brought in time, the defense of limitations may be raised by a motion to dismiss under Rule 12(*b*) (6) of the Rules of Civil Procedure, with or without affidavits to support the motion. *Ramos v. People*, 67 P.R.R. 600; *Bithorn v. Santana, supra*, 286–7.[5] However, unlike the *Ramos* and *Bithorn* cases, here

---

[5] *Cf. Peña v. Eastern Sugar Associates*, 75 P.R.R. 288, where we held that the statute of limitations could not be raised for the first time in this Court. In the *Peña* case no motions were filed by the defendant. It merely filed an answer to the complaint which did not contain the defense of prescription.

the motion to dismiss did not specifically mention prescription. Indeed, as we have seen the trial court did not even hold that the filiation suit had prescribed. Its only ruling as to prescription was with reference to the nullity action, which for reasons already noted was unnecessary and inappropriate. There is nothing in the record indicating that the attention of the trial court was specifically directed to the issue of prescription of the filiation suit as being included within the motion to dismiss. Under these circumstances, we think it appropriate to remand the case to the trial court in order that Apolinar may, by affidavit or otherwise, show if he can that the statute of limitations as to his filiation suit has been tolled or for some other reason is not applicable. We shall therefore reverse the judgment of the trial court and remand the case for that purpose.

For the reasons stated, the judgment of the Superior Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Pérez Pimentel concurs in the result.